# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Joseph Gustafson,

      Petitioner,

v.

Warden B. Reiser,

      Respondent.

Civil No. 14-3351 (JRT/JJK)

**REPORT AND RECOMMENDATION**

This matter is before the Court, Magistrate Judge Jeffrey J. Keyes, on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  Petitioner Joseph Gustafson ("Petitioner" or "Gustafson") is a prisoner confined at the Minnesota Correctional Facility at Faribault, Minnesota, as the result of his conviction and sentencing in Hennepin County District Court.  He was found guilty by a jury on a charge of racketeering, as well as independent predicate offenses of aiding and abetting kidnapping, aiding and abetting second-degree assault, and aiding and abetting first-degree arson.  He was sentenced to a term of 180-months imprisonment.  The action has been referred to this Court for report and recommendation to the District Court under 28 U.S.C. § 636 and Local Rule 72.2.

The Petitioner alleges that the evidence presented at trial was insufficient to prove guilt beyond a reasonable doubt because accomplice testimony was not corroborated; two of the predicate offenses occurred simultaneously and should

be construed as one offense; and the predicate aiding and abetting offenses were

not shown by proof of Petitioner's actual knowledge of the offenses.  Petitioner

also alleges improper admission of prejudicial character evidence and ineffective

assistance of trial counsel.  For the reasons stated below this Court recommends

that the Petition (Doc. No. 1) be dismissed with prejudice.

## I.  Background and Claims[1]

Petitioner was charged in June 2011 with racketeering,[2] aiding and abetting

---

[1] Facts relating to the criminal charges are taken from *State v. Gustafson*, 2013 WL 1705029 (Minn. App. April 22, 2013) unless otherwise cited.  *See Smith v. Kemna*, 309 Fed. Appx. 68 (8th Cir. 2009)(unpublished opinion)(facts quoted from state appellate decision).

[2] Minn. Stat. § 609.903, subd. 1 states:

A person is guilty of racketeering if the person:

(1) is employed by or associated with an enterprise and intentionally conducts or participates in the affairs of the enterprise by participating in a pattern of criminal activity;

(2) acquires or maintains an interest in or control of an enterprise, or an interest in real property, by participating in a pattern of criminal activity; or

(3) participates in a pattern of criminal activity and knowingly invests any proceeds derived from that conduct, or any proceeds derived from the investment or use of those proceeds, in an enterprise or in real property.

Minn. Stat. § 609.902, subd. 6 defines "pattern of criminal activity" to mean conduct constituting three or more criminal acts that:

(1) were committed within ten years of the commencement of the criminal proceeding;

kidnapping, aiding and abetting terroristic threats, aiding and abetting aggravated first-degree robbery, conspiracy to commit first-degree murder, aiding and abetting attempted first-degree murder, and aiding and abetting first-degree arson.  The charges arose out of Petitioner's activities with a group identified as the "Beat-Down Posse" ("BDP"), which was led by the Petitioner and his son. Members of the BDP were suspected of involvement in robberies, assault, kidnappings, weapons trafficking, narcotics trafficking, and arson, which activities were facilitated through a bail bond company that was owned and operated by Petitioner.

Several BDP members or their associates testified at Petitioner's jury trial in January 2012, implicating Petitioner and his bail bond company in BDP's criminal activities.  In particular, testimony was provided with respect to the kidnapping and assault of an individual identified as J.K. in September 2008, and the arson of a house on Girard Ave. in April 2006.  Testimony was also provided regarding Petitioner's involvement in the aggravated robbery of a person identified as C.L. in April 2008.

--------

(2) are neither isolated incidents, nor so closely related and connected in point of time or circumstance of commission as to constitute a single criminal offense; and

(3) were either: (I) related to one another through a common scheme or plan or a shared criminal purpose or (ii) committed, solicited, requested, importuned, or intentionally aided by persons acting with the mental culpability required for the commission of the criminal acts and associated with or in an enterprise involved in those activities.

Prior to the case being given to the jury for deliberations, the complaint was amended to delete the aiding and abetting terroristic threats and aiding and abetting aggravated robbery charges, and adding a count of aiding and abetting second-degree assault.[3]   The jury was presented with seven possible predicate acts for purposes of the racketeering charge, some of which were not separately charged offenses.  The jury found, beyond a reasonable doubt, that Petitioner committed the four predicate acts of aiding and abetting kidnapping, aiding and abetting second-degree assault, aiding and abetting first-degree arson, and accessory after the fact to aggravated robbery.  These findings satisfied Minnesota's racketeering statute's requirement of three or more criminal acts establishing a pattern of criminal activity.  Minn. Stat. § 609.902, subd. 6.  On the basis of the predicate acts Petitioner was convicted and sentenced on the racketeering charge, as well as the independent kidnapping, second-degree assault and first-degree arson offenses.  The jury found that Petitioner was not guilty of conspiracy to commit first-degree murder, aiding and abetting attempted first-degree murder, and aiding and abetting first-degree burglary.

On the conviction for racketeering the district court sentenced Petitioner to 180 months imprisonment.  On the independent counts the court sentenced

_____

[3] Minn. Stat. § 609.05, subd. 1 states:

A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

4

Petitioner to 81 months for aiding and abetting arson, a consecutive 21 months

for aiding and abetting second-degree assault, and an additional consecutive

sentence of 48 months for aiding and abetting kidnapping.  The sentences on the

predicate aiding and abetting offenses run concurrent with the 180-month

racketeering term.  ((Doc. No. 14) Resp. Mem. 2.)

     **Minnesota Court of Appeals Decision.**  Petitioner's convictions were

affirmed on appeal to the Minnesota Court of Appeals, *State v. Gustafson*, 2013

WL 1705029 (Minn. App. April 22, 2013) , and the Minnesota Supreme Court

denied review.  The Court of Appeals held that accomplice testimony as to

charges of aiding and abetting kidnapping and aiding an abetting second-degree

assault were sufficiently corroborated to support the convictions on each of those

charges.  The court also held that the two charges were not so closely related

that they could not constitute separate predicate acts for purposes of the

racketeering offense.  Further, the Court of Appeals found accomplice testimony

on the aiding and abetting first-degree arson charge to be adequately

corroborated, and the uncharged predicate act of accessory after the fact to

aggravated robbery to have been proven by sufficient evidence to sustain the

jury's determination.  With respect to claims that the district court erred in

admitting improper character evidence, the Court of Appeals found no error as to

testimony suggesting that Gustafson was racist or was associated with the Hell's

Angels, and that allowance of testimony regarding a witness's placement in a

5

witness-protection program and a witness's statement that Gustafson was a very

dangerous man were in error, but did not affect the outcome of the case.  Finally,

the Court of Appeals simply stated without further discussion that claims asserted

in Gustafson's pro se appellate brief, including a claim of ineffective assistance of

counsel, had no merit.  Respondent does not contend that Petitioner has not

exhausted his state court remedies.

**Habeas Claims.**  Petitioner describes the current Petition as containing

three main grounds for relief which are summarized as follows: (1) the convictions

were based on insufficient evidence and his sentence was improper under

*Blakely v. Washington*, 542 U.S. 296 (2004); (2) he was denied a fair trial due to

the cumulative effect of judicial bias as reflected in certain trial rulings and

sentencing, seating a biased juror, and frequent references by the prosecutor to

defendant's bad character and prior bad acts; and (3) ineffective assistance of

trial counsel.  ((Doc. No. 2) Pet. Mem. 1-2.)

## II.  Legal Standards

### A.    AEDPA Standard

Habeas relief is available to a state prisoner if "he is in custody in violation

of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The Anti–Terrorism and Effective Death Penalty Act (AEDPA) limits habeas

review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d)(1)–(2).

The United States Supreme Court explained the meanings of the "contrary to" and "unreasonable application" clauses in *Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412–13. A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005) (quoting *Williams*, 529 U.S. at 411).

###    B.    Exhaustion of Constitutional Claims

A petitioner's claims in a habeas corpus action must be based on an alleged violation of federal constitutional rights, as required by 28 U.S.C. § 2254(a).  *See Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.") (citations omitted).  Simply stated, a prisoner cannot raise federal constitutional claims for the first time on petition for federal habeas corpus relief, and to provide the State the necessary opportunity to pass upon and correct alleged violations of its prisoner's federal rights, the prisoner must fairly present his constitutional claim in state court, thereby alerting the state court to the nature of the claim.  *Carney v. Fabian*, 441 F.Supp.2d 1014, 1022 (D. Minn. 2006) (citations omitted).  The federal nature of the claim must be fairly presented in state court by reference to a specific federal constitutional right, a federal case, or a state case, which raises a pertinent federal constitutional issue. *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005); *Abdullah v. Groose*, 75 F.3d 408, 411-12 (8th Cir. 1996).  "[O]rdinarily, a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim, in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (litigant "can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in

conjunction with the claim the federal source of law on which he relies or a case decaying such a claim on federal grounds, or by simply labeling the claim 'federal.'")

A federal court cannot consider the merits of a habeas corpus petition unless the petitioner can demonstrate exhaustion of all of the available state court remedies.  28 U.S.C. §2254(b) and (c);  *Rose v. Lundy*, 455 U.S. 509 (1982). Exhaustion of state remedies is required to ensure that state courts have the initial opportunity to review and adjudicate a petitioner's federal constitutional claims.  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  A claim is considered to be exhausted when the highest state court has been permitted a fair opportunity to rule on the factual and theoretical substance of the claim.  *Krimmel v. Hopkins*, 56 F.3d 873, 876 (8th Cir.)(*cert. denied*, 116 S.Ct. 578 (1995)); *Ashker v. Leapley*, 5 F.3d at 1179 (*citing Picard v. Connor*, 404 U.S. at 275-278).

### C.   Procedural Default

When a petitioner has failed to fairly present federal constitutional claims in state court, the federal court must determine whether the state procedural rules would allow hearing on the merits in a state court proceeding.  *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997).  If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief, unless cause and prejudice, or miscarriage of justice, can be demonstrated.  *Id.*  Under Minnesota

law, "[o]nce a [defendant] has taken a direct appeal, all claims raised in the direct appeal as well as 'all claims known but not raised' at the time of the direct appeal are barred from consideration in any subsequent petitions for post-conviction relief." *Cooper v. State*, 745 N.W.2d 188, 190-91 (Minn. 2008) (quoting *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976)).  If the petitioner has failed to exhaust his state court remedies, and if the court to which he should have presented his claim would now find it procedurally barred, then the claim is procedurally defaulted.  *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).  A claim that is procedurally defaulted under state law is barred from federal habeas review only if the state procedural rule is firmly established and regularly followed.  *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995).  Minnesota's *Knaffla* rule is a state procedural rule that is firmly established and regularly followed.  See 9 MINN. PRAC., CRIMINAL LAW AND PROCEDURE § 39.1 (3rd ed.) (stating *Knaffla* rule is "frequently and strictly applied to deny relief in post conviction proceedings.)

Although the state court procedural bar is "nearly absolute," a petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows his actual innocence. *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991.))  "To demonstrate prejudice, a petitioner must show that the errors of which he complains 'worked to his actual and

10

substantial disadvantage, infecting his entire [hearing] with error of constitutional

dimensions.'" *Charron v. Gammon*, 69 F.3d 851, 858 (8th Cir. 1995) (citations

omitted).   To make out a showing of a fundamental miscarriage of justice, a

habeas petitioner must offer compelling evidence to demonstrate "that 'a

constitutional violation has probably resulted in the conviction of one who is

actually innocent.'"   *McCall v. Benson*, 114 F.3d 754, 758 (citing *Brownlaw v.*

*Groose*, 66 F.3d 997, 999 (8th Cir. 1995)(quoting *Schlup v. Delo*, 513 U.S. 298,

327, 115 S.Ct. 851, 867 (1995)).

## III.   Count I, Insufficiency of Evidence

Petitioner joins several claims together in Count I under the broad assertion

that "no rational trier of fact could have proven any of the offenses based on the

evidence and testimony".   (Pet. at 6).   More specifically he alleges, first, that the

assault offense and the kidnapping offense were too closely related and were

essentially a single criminal offense which could not constitute separate predicate

acts for purposes of establishing a pattern of criminal activity under the Minnesota

racketeering statute.   However, the Minnesota Court of Appeals rejected this

argument on direct appeal, finding the "the criminal objective of the kidnapping

was to contain J.K. within the garage and to make sure he did not have a wire.

After that was complete, J.K. was allowed to put his clothes back on and sit on a

chair in the garage.   Then the assault began and Tieden's objective was to beat

up J.K.   It is clear from the testimony that although the offenses were admittedly

close in time, they were separate offenses". *Gustafson*, 2013 WL 1705029 at *3.

This finding of fact by a state court is entitled to special deference, and is

presumed to be correct on federal habeas review. *Culkin v. Perkett*, 45 F.3d

1229, 1232 (8th Cir. 1995) (stating that findings of the state court are presumed

to be correct in the absence of any showing otherwise).

Petitioner's claim that the state failed to prove separate predicate acts

under Minnesota's racketeering statute does not raise a federal claim that is

cognizable on federal habeas review.  Although he states in his habeas petition

that it would be a violation of the Double Jeopardy Clause of the Fifth

Amendment to the U.S. Constitution to treat the kidnapping and assault as

separate offenses, Petitioner did not raise this constitutional issue on his direct

appeal and, as noted above, a prisoner cannot raise federal constitutional claims

for the first time on petition for habeas corpus relief.  There were no citations to

the U.S. Constitution or federal case law for any constitutional propositions

whatsoever in the appellant's briefing on this subject.  And the Court of Appeals

did not expressly or implicitly recognize the existence of any claims or

implications based on federal law.  Thus, the claim is procedurally defaulted and

Petitioner has not shown cause and prejudice or a miscarriage of justice.

Next, Petitioner makes a series of arguments that the evidence presented

at trial was insufficient to prove that he aided and abetted the commission of a

crime under Minn. Stat. § 609.05 or that he was guilty of racketeering.  For

example, he argues that "[n]o reasonable person in the jury could have found that

[Petitioner] aided or abetted any of the predicate offenses required for the

racketeering offense" and that "the evidence and the accomplice testimony don't

(sic) even prove that Troy Neuberger started the fire."  ((Doc. No. 2) Pet. Mem. at

2).)  However, "[c]laims of insufficient evidence are frequently made and rarely

upheld in habeas proceedings."  *Jarrett v. Headley*, 633 F.Supp. 1403, 1421

(S.D.N.Y. 1986) (*rev'd on other grounds*, 802 F.2d 34, (2nd Cir. 1986)).  In its

rulings that the evidence was sufficient, the Minnesota Court of Appeals

employed the same standard as relevant federal precedent.  *See Gustafson*,

2013 WL 1705029 at *2-*5.  In *Gustafson*, the Court of Appeals stated "when

considering a claim of insufficient evidence, this court's review is limited to a

painstaking analysis of the record to determine whether the evidence, when

viewed in the light most favorable to the conviction, is sufficient to allow the jurors

to reach the verdict they did."  *Id.* at *2 (citing *State v. Webb*, 440 N.W.2d 426,

430 (Minn. 1989).  Further, "the reviewing court must assume that 'the jury

believed the state's witnesses and disbelieved any evidence to the contrary.'"  *Id.*

(citing *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).  This is consistent with

the United States Supreme Court's holding in *Jackson v. Virginia*, 443 U.S. 307

(*reh'd denied* 444 U.S. 890 (1979).  As held in *Jackson*, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."  443 U.S. at 319.  The Minnesota Court of Appeals,

in reviewing the sufficiency of the evidence in this case, did not reach a decision

that "was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United

States.  28 U.S.C. § 2254(d)(1).

The Petitioner also claims that there was insufficient evidence to convict

because accomplice testimony was not corroborated.  He argues that the state

failed to prove that he played a knowing role in the kidnapping and assault of J.K.

because the only evidence of his involvement was testimony from Bryan Tiedens,

the man who actually kidnapped and assaulted J.K., and Tieden's uncorroborated

testimony is insufficient to support a conviction.  Petitioner also contends that he

should not have been convicted on the arson count because the testimony of the

accomplice who set the fire, Troy Neuberger, was also uncorroborated.  And he

contends that the state did not prove that he committed the offense of accessory

after the fact to a robbery because the testimony about Petitioner's involvement

came from accomplices to the robbery and was uncorroborated.

The Minnesota Court of Appeals dealt with both of these claims about

uncorroborated accomplice testimony.  As to the kidnapping and assault, the

court found that there was adequate testimony from the victim, J.K., to

corroborate Tieden's testimony.  There was also corroborating testimony from the

state's fire investigator to support the testimony of Neuberger, the accomplice to

the arson, and the Petitioner's involvement in the offense of accessory after the fact to robbery was corroborated by a person who was not an accomplice to the act of cleaning up the blood after the robbery.

The corroboration requirement of Minn. Stat. § 634.04 "is a matter of state law that does not implicate a constitutional right cognizable on habeas review." *Redding v. State of Minnesota*, 881 F.2d 575, 578 (8th Cir. 1989) (citations omitted).  Directly stated, "there is no constitutional requirement that accomplice testimony be corroborated."  *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir. 1993). *See also United States v. Drews*, 877 F.2d, 10, 12-13 (8th Cir. 1989).  Here, Petitioner has not shown the existence of any constitutional right to corroboration of the testimony of such witnesses, regardless of any accomplice designation. Moreover, Petitioner's claims about lack of corroborating testimony were not fairly presented to the Minnesota state courts as claims under the United States Constitution and were not reviewed by the Minnesota Court of Appeals in any constitutional context. The insufficient evidence claim was presented to and addressed by the Minnesota Court of Appeals in the context of corroboration of accomplice testimony under Minnesota statutes, not federal law.  This claim is thus unexhausted and procedurally defaulted and Petitoner has not shown cause and prejudice or a miscarriage of justice.

Finally, Petitioner includes in Count I the claim that his "sentencing violates '*Blakely*'."  In *Blakely v. Washington*, 542 U.S. 296, the U.S. Supreme Court held

that a fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 301.  It is not readily apparent how *Blakely* applies in this case and Petitioner has offered no persuasive explanation.  In any event, the issue was not properly presented to the Minnesota state courts for review, and it is thus unexhausted and procedurally defaulted and Petitioner has not shown cause and prejudice or a miscarriage of justice.

## IV.  Count II, Trial Errors

Petitioner's second ground for habeas relief is presented as a broad collection of alleged errors relating to the trial.  He asserts that these errors cumulatively violated his constitutional right to a fair trial.  In this claim, Petitioner contends that: (1) the trial judge erred and exhibited bias by refusing to join Petitioner's trial with his son's trial and then presiding over both proceedings. Petitioner argues that the separate trials prevented the defendants from sharing legal materials and allowed perjured testimony to be introduced at one or both trials with the knowledge of both the judge and the prosecution.  Petitioner also alleges that judicial bias was shown by: (2) the trial judge sentencing him on the racketeering charge at a higher severity level than was warranted;[4] and (3)

---

[4]  Racketeering does not have a specified severity level under the Minnesota sentencing guidelines.  Minnesota Sentencing Guideline II.A states: "When unranked offenses are being sentenced, the sentencing judges shall exercise their discretion by assigning an appropriate severity level for that offense

allowing a former police reserve officer to be seated as a juror, despite the juror's presumed bias based on his police connections.  In addition, Petitioner contends that: (4) the prosecution was deliberately and improperly delayed until testimony could be induced from other suspects, thereby violating his right to due process under the Fifth and Sixth Amendments by impairing his ability to prepare and present a full and effective defense, and (5) the prosecution failed to call certain non-accomplice witnesses.

None of the above referenced claims (1) through (5) were raised as a constitutional claim or issue under federal law in Petitioner's direct appeal to the Minnesota Court of Appeals.[5]   Again, there were no citations to the U.S. Constitution or federal case law for any constitutional propositions whatsoever in either the appellant's primary brief or his pro se supplemental brief on these particular subjects. Indeed, these claims were not presented at all, in any context.

_____

and specify on the record the reasons a particular level was assigned." *State v. Kenard*, 606 N.W.2d 440, 443 (Minn. 2000) (stating factors to consider when assigning a severity level to an unranked offense).

[5] In his reply memorandum (Doc. No. 18), Petitioner contends that he exhausted state remedies for the federal claims in his habeas petition because he presented those claims to the Minnesota Supreme Court on a petition for further review that was denied. ((Doc. No. 19) Reply Ex.)  A claim is exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim.  *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993).  Obviously, on an appeal the supreme court cannot have had a fair opportunity to rule on a claim that was not previously presented to the lower appellate court.

And of course, the Court of Appeals again did not address or even recognize the existence of any these claims or any implications based on federal law.  Thus, the claims are unexhausted and procedurally defaulted and Petitioner has not shown cause and prejudice or a miscarriage of justice.

Next, Petitioner alleges error in the court's refusal to allow testimony regarding illegal activities by the Minneapolis Gang Task Force and Minneapolis Police Investigator O'Rourke's former involvement with the task force.  In his pro se supplemental brief to the Minnesota Court of Appeals the Petitioner alleged:

> Minneapolis Police Sergeant O'Rourke is a former member of the Minnesota Gang Strike Force, which was disbanded because they were robbing drug dealers, planting evidence and filing fraudulent charges against their victims.  Upon the State's motion, and off the record, the court ruled that the Appellant's attorney could not cross examine Sergeant O'Rourke about his involvement with the disbanded Minnesota Gang Strike Force.  This is a clear violation of the Sixth Amendment of the United States, and Minnesota, Constitutions.  "Petitioner was thus denied the right of effective cross-examination which would be a Constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it."  *Davis v. Alaska*, 415 U.S. 308, 318 (1974).

Pet., Appx. 136.

Like the other claims asserted in pro se briefing to the Minnesota Court of Appeals, this claim was summarily dismissed on the merits without discussion.  In this federal habeas action the Petitioner alleges that refusal to allow gang task force testimony denied him the defense of "alternative perpetrator" because the task force was committing the same offenses that the BDP was accused of doing, and the actions of O'Rourke and the Gang Task Force were more egregious than

alleged activities of the Petitioner and his son had been shown to be.

Petitioner is not entitled to habeas relief on his gang task force evidence claim. As previously stated, an application for writ of habeas corpus may not be granted as to a claim adjudicated in state court proceedings unless such adjudication resulted in a decision that is contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86 at 98 (2011). Petitioner has not identified any clearly established Supreme Court precedent to support a claim of Sixth Amendment violation relating to the trial court's refusal to allow the gang task force testimony here as issue and this claim must therefore be denied.

Finally, Petitioner alleges error in the introduction of evidence of bad character. The claim as presented to the Court of Appeals was that improper character evidence was elicited at trial through testimony that Petitioner often identified a certain person by using a highly inflammatory racial term; that Petitioner was prejudiced by testimony inferring that he was the reason for an individual being placed in a witness protection program; that Petitioner was affiliated with the Hell's Angels motorcycle gang; that he was involved in other crimes, including prostitution and growing marijuana; and that a police witness

was allowed to state that Gustafson is a "very dangerous man."   The Court of

Appeals held that under the circumstances it was not plain error to admit the

references to the Hell's Angels, marijuana growing, and prostitution.  It reasoned

that these references were not highly inflammatory or offered to show bad

character.  *Gustafson*, 2013 WL 1705029 at *8.  The Court of Appeals found that

it was error to allow witness-protection evidence without a cautionary jury

instruction, and the witness statement that Gustafson was a very bad man was

improper character evidence, but such evidence was not prejudicial and did not

affect the outcome of the case in light of the extensive testimony received.

Finally, the appellate court held that the Petitioner had not demonstrated that

either isolated errors or cumulative errors had affected the case outcome to

deprive him of a fair trial.  *Id.* at *8-*9.

The right to a fair trial is guaranteed by the Sixth and Fourteenth

Amendments.  *Hellum v. Warden, U.S. Penitentiary Leavenworth*, 28 F.3d 903,

907 (8th Cir. 1994) (citations omitted).  Although Petitioner makes generalized

references to the right to a fair trial under federal law, in his habeas petition he

merely points to these separate evidentiary issues which the state appellate court

found not to be individually or cumulatively prejudicial to his right to a fair trial.

Petitioner has failed to establish that the state court decision was contrary to

clearly established federal law, or involved an unreasonable application of a

clearly established federal law; or was based on an unreasonable determination

of the facts in light of evidence presented in the state court proceeding.  28

U.S.C. § 2254(d).  Petitioner was not denied a fair trial and thus is not entitled to

federal habeas corpus relief for alleged errors at trial, including improper

presentation of evidence of bad character, statements regarding Petitioner's

involvement in criminal activities or motorcycle gangs, characterization of

Petitioner as a dangerous person, references to witness protection, or otherwise.

## V.  Count III, Ineffective Assistance Of Counsel

Petitioner contends that he was deprived of his constitutional right to

effective assistance of counsel because his attorney, Barry Voss, did not

sufficiently investigate the State's discovery and witnesses, failed to seek a

change of venue, waived speedy trial without client consent, and failed to seek

recusal of the trial judge and a juror on bias grounds.  Petitioner contends that the

deficiencies in his attorney's representation is strongly indicated by the lawyer's

disbarment shortly after Petitioner's trial.  As previously stated, this issue was

presented to the Minnesota Court of Appeals in a pro se supplemental brief, and

the Court of Appeals tersely dismissed issues raised in the appellant's pro se

brief on the merits.

As Petitioner correctly recognizes, his ineffective assistance of counsel

claim must be decided in accordance with the Supreme Court's opinion in

*Strickland v. Washington*, 466 U.S. 668 (1984).  There the Court held that a party

claiming ineffective assistance of counsel must establish (1) that his attorney's

21

performance "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 688, 694; see also *Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir.), *cert. denied*, 519 U.S. 956 (1996).  When evaluating whether a criminal defendant received reasonably competent legal representation, a court must be mindful of the "strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance."  *Strickland*, 466 U.S. at 689.  "Counsel's challenged conduct is to be evaluated in light of the circumstances surrounding the decision, not with the 20/20 vision of hindsight."  *Garrett*, 78 F.3d at 1301.

To satisfy the second *Strickland* requirement, a habeas petitioner must make "a showing of prejudice sufficient to undermine confidence in the outcome of the trial."  *Garrett* at 1302.  More specifically, the petitioner must demonstrate that there is a "reasonable probability that the proceeding would have ended in a different result without counsel's errors."  *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995).  "The likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693).

In this case, Petitioner has failed to satisfy either of the *Strickland* requirements.  In his habeas petition and supporting memoranda, Petitioner merely makes conclusory allegations of attorney error and offers essentially no

contextual facts or argument as to the effect of the presumed error.  This Court is apprised of a few particulars as to this claim only by reference to Petitioner's pro se supplemental appellate brief in which he contends that his attorney failed to read witness statements indicating police efforts to get the witness to implicate Gustafson in crimes; failed to investigate the State's witnesses to reveal witness coaching and incentives for providing incriminating testimony; failed to request change of venue in light of pretrial publicity; waived speedy trial without consent; failed to call a specified witness; failed to recuse an obviously biased trial judge; failed to call inmate witnesses who had been offered incentives to provide information regarding the Petitioner; and failed to strike a retired police officer from the jury.

Petitioner has not established the validity of either his premises or his conclusions, and thus, he has not shown that his counsel's representation fell below an objective standard of reasonableness in any regard.  As to whether to call a particular witness, move for change of venue, or seek recusal of a judge or juror for bias, the decisions are clearly matters of trial strategy and balancing of options which cannot reasonably be judged in hindsight. *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987).  Similarly, whether to attempt to impeach a witness or waive speedy trial are wholly tactical considerations.  Also, Petitioner provides no particulars to establish the existence of specific witness impeachment evidence that his counsel should have, but did not, discover.  He

has not shown that his attorney's performance fell below an objective standard of reasonableness and thus has not satisfied the first *Strickland* requirement.

Likewise, Petitioner has made no showing of prejudice which would call the jury's verdict into question and has not demonstrated any reasonable likelihood that the trial result would have been different but for the attorney's purported errors.  Indeed, whether a decision to seek change of venue, attempt to recuse a judge or juror, call or impeach a witness, or waive speedy trial was either a good or bad decision, is pure conjecture, even in hindsight.  Petitioner has not even begun to show prejudice resulting from his attorney's mistakes and cannot show that he would not have been convicted if his attorney had performed differently.  A habeas petitioner is not relieved of the burden of showing that the state court had no reasonable basis for denying relief.  *Harrington v. Richter*,  562 U.S. 86 at 98.   As determined by the Minnesota Court of Appeals, Petitioner's claim of ineffective assistance of counsel is without merit, and he has not shown in this habeas petition that there was no reasonable basis for the state court's denial of relief on this claim.

## VI. CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(3).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claims any differently than they have been decided here.  Petitioner has not identified, (and the Court cannot independently discern), anything novel, noteworthy or worrisome about this case that warrants appellate review.  It is therefore recommended that Petitioner should <u>not</u> be granted a COA in this matter.

Based upon all of the files, records, and proceedings herein, the magistrate judge makes the following:

## RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Joseph Gustafson's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) be **DISMISSED WITH PREJUDICE**.

Dated: June 4, 2015

    s/*Jeffrey J. Keyes*
Jeffrey J. Keyes
United States Magistrate Judge

25

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by June 19, 2015, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.